IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FOREST GUARDIANS, a non-profit
organization, and T and E, Inc., a
non-profit organization,

    Plaintiffs,

vs.                                                          No. CIV 98-1035 MV/WWD-ACE

BUREAU OF LAND MANAGEMENT,
an agency of the United States Department
of the Interior,

    Defendant,

IRVIN and PATRICIA PABLO, IRENE
ARROSSA, THG CORPORATION, and
FNF PROPERTIES L.L.C., a New Mexico
limited liability company,

    Applicants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on FNF Properties' Application for Leave to Intervene, filed October 2, 1998 **[Doc. No. 2]**, Application for Leave to Intervene of Irvin and Patricia Pablo, Irene Arrossa and THG Corporation, filed October 28, 1998 **[Doc. No. 8]**, and FNF Properties' Motion for Expedited Consideration of Application for Leave to Intervene, filed November 4, 1998 **[Doc. No. 16]**. The Court, having reviewed the pleadings, relevant law, and being otherwise fully informed finds that the motions to intervene are well taken and will be **granted in part**, and that the motion for expedited consideration will be **granted**.

**Background**

On August 27, 1998 Plaintiffs Forest Guardians and T and E, Inc., both non-profit environmental advocacy groups, filed a complaint in this Court essentially alleging that, in issuing grazing permits in the El Malpais National Conservation Area (NCA) in New Mexico Defendant Bureau of Land Management (BLM) did not comply with the mandates of the National Environmental Policy Act, 42 U.S.C. § 4321 (NEPA). Claiming that livestock grazing has an adverse environmental impact in El Malpais, Plaintiffs seek a declaration pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 (APA) that the BLM failed to observe NEPA, an order requiring the BLM to comply with NEPA, an injunction to prevent livestock grazing and revocation of current grazing permits pending compliance, and costs and attorney's fees.

All applicants currently hold grazing rights and graze cattle within the El Malpais NCA and apply for leave to intervene as Defendants. Applicant FNF properties, as the holder of the largest grazing allotment in the NCA, alleges that its interests will be directly and severely impacted if the Court grants either the declaratory or injunctive relief Plaintiffs request. Applicants Pablo, Arrossa, and THG currently hold permits for smaller grazing allotments, but all contend that without those grazing rights or the ability to graze their livestock within their permit area, they will be forced to abandon their ranching activities. Mr. and Mrs. Pablo explain that they are persons of modest means and that their life savings are invested in their ranch. The Arrossa ranch is what remains of a family legacy that spans many generations. Applicants Pablo, Arrossa, and THG, in addition to having an economic interest in the outcome of this case, all claim having at their own expense supported wildlife in the El Malpais by providing year-round water, assert that they practice ecologically sensitive ranching and, much like Plaintiffs, seek the preservation of El Malpais in its wild beauty

and natural state.

Defendant BLM neither opposes nor supports either application to intervene. The BLM does ask, however, that the Court limit the intervenors' participation, allowing the intervenors only to address the positions taken by Plaintiffs and Defendant, and not allowing them to bring affirmative claims, claims for attorney's fees, or file dispositive motions except by express leave of the Court.

**Discussion**

Parties may intervene, upon timely application, either as of right or permissively. Fed. R. Civ. P. 24. When as of right, an intervenor must show in relevant part 1) that she has an interest relating to the property or transaction which is the subject of the action, 2) that she is so situated that the disposition of the action may as a practical matter impair or impede her ability to protect that interest, and 3) that existing parties do not adequately protect that interest. *See id.* For permissive intervention, a party may intervene when her "claim or defense and the main action have a question of law or fact in common." *Id.*

Applicants focus most of their briefs on the argument that intervention in this case should come as of right. FNF Properties, leading the charge,[1] argues that as the holder of grazing permits and the owner of water rights and substantial range improvements within the El Malpais NCA it has a significant financial interest in the Court's adjudication of BLM's compliance with NEPA in administering grazing permits. FNF also advances that a ruling on compliance could impair or impede its ability to protect that interest, since a determination that the BLM has failed to comply

---

[1] To simplify its opinion, the Court recites applicant FNF Properties' argument, noting that applicants Pablo, Arrossa, and THG Corporation have stated that "[e]xcept for some legally insignificant differences, [those] [a]pplicants and FNF Properties are similarly situated with respect to their interests and exposure in this case." Memorandum in Support of Application for Leave to Intervene of Irving and Patricia Pablo, Irene Arrossa and THG Corporation at 3. The Court does not imply, however, that those applicants' claims are any less worthy of consideration.

3

with NEPA, despite being required to do so, could lead to a suspension or revocation of grazing permits that could harm it and other intervenors financially. Finally, FNF claims its and the BLM's interests are somewhat divergent, since it seeks to protect its grazing rights and the BLM, in addition to being subject to NEPA, must represent the public interest in the management of lands for multiple uses.

In response, Plaintiffs Forest Guardians and T and E concentrate on one point: that applicants only have an economic interest in this litigation, and that economic interests in the outcome of NEPA litigation are not protectable interests for purposes of intervention in such actions. Plaintiffs further maintain that, not having a protectable interest, applicants can not meet the second and third as-of-right intervention requirements. Lastly, Forest Guardians and T and E suggest that were the Court to grant intervention, the Court should limit such intervention to the remedial phases of this action, citing *Forest Conversation Council v. United States Forest Service*, 66 F.3d 1489 (9th Cir. 1995).[2] It is uncontroverted that the motions to intervene in this case are timely.

As the starting point of its analysis the Court, mindful that in the Tenth Circuit intervention "has tended to follow a somewhat liberal line," *Nat'l Farm Lines v. Interstate Commerce Comm'n.*, 564 F.2d 381, 384 (10th Cir. 1977), looks to *Coalition of Arizona/New Mexico Counties v. Dept. of Interior*, 100 F.3d 837 (10th Cir. 1996), as one of the circuit's latest pronouncements on intervention. In that Endangered Species Act (ESA) case, the court required that for Rule 24 purposes an interest be "direct, substantial, and legally protectable." *Id.* at 840. Focusing both on the intervenor's direct

---

[2] Forest Guardians and T and E also assert, looking to permissive intervention, that such intervention would cause undue delay and prejudice in the adjudication of this NEPA compliance action. Beyond that basic statement, however, Plaintiff fail to explain this alleged undue delay and prejudice. Given that applicants have acted quickly, even before Defendant filed an answer to Plaintiffs' complaint, the Court fails to apprehend either undue delay or prejudice flowing from allowing intervention.

4

involvement with the species at issue, as well as the ESA provision allowing a private citizen to sue for the placement of species on an endangered list, the *Coalition* court held that "economic interest is not the sine qua non of the interest analysis for intervention as of right." *Id.* at 841. The court explained that "to limit intervention to situations where the applicant can show an economic interest would impermissibly narrow the broad right of intervention enacted by Congress and recognized by the courts." *Id.* In ruling that an economic interest need not be present for intervention, the court therefore implicitly held that a showing of economic interest was one indicium that could suffice to satisfy Rule 24's interest requirement. *See also Sanguine, Ltd. v. United States Dept. of Interior*, 736 F.2d 1416, 1420 (10th Cir. 1984). Consequently, the reasoning of *Coalition* indicates that the interests of applicants here, which allegedly will be directly affected should grazing be suspended or revoked in El Malpais, could perhaps be sufficient to satisfy Rule 24's interest requirement.

Nonetheless, despite its extensive discussion of intervention *Coalition* does not furnish sufficient support for applicants' position. In addition to considering economic interests, the *Coalition* court also gave weight to the ESA's granting a private right of action with respect to listing endangered species. *Id.* NEPA, however, does not provide a comparable right, *State of Utah v. Babbitt*, 137 F.3d 1193, 1203 (10th Cir. 1998), and our circuit has cautioned that an interest analysis is "a highly fact-specific determination." *Coalition*, 100 F.3d at 841, *quoting Security Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Furthermore, the Tenth Circuit has not directly ruled on whether, in the context of a NEPA enforcement action, an economic interest alone is sufficient for intervention as a defendant. This Court, therefore, does not read *Coalition* to mandate intervention in this case.

The Ninth Circuit has, however, examined at length economic interests in NEPA

5

intervention. In *Portland Audubon Soc. v. Hodel*, 866 F.2d 302 (9th Cir. 1989), the BLM was "in the process of selling for harvesting a large number of tracts of old-growth timber located in seven management districts." *Id.* at 303. The plaintiffs requested declaratory and injunctive relief to prevent these sales that were allegedly in violation of NEPA and other statutes. *Id.* at 303. Putative intervenors were logging companies who sought to intervene as of right on the NEPA claim and who undeniedly had " an economic interest in ensuring a continued supply of timber from BLM lands." *Id.* at 308. But, focusing on NEPA, the *Portland Audubon* panel found that interest insufficient in concluding that

> the intervenors lack[ed] an adequate interest relating to the plaintiffs' NEPA claims where NEPA provides no protection for the purely economic interests that they assert. Although the intervenors have a significant economic stake in the outcome of the plaintiffs' case, they have pointed to no "protectable" interest justifying intervention as of right.

*Id.* at 309.

Without overruling *Portland Audubon*, the Ninth Circuit revisited environmental intervention in *Sierra Club v. United States Environmental Protection Agency*, 995 F.2d 1478 (9th Cir. 1993), a case initiated under the citizens' suit provisions of the Clean Water Act, 33 U.S.C. § 1365(a)(2). *Id.* at 1480. In *Sierra Club*, the City of Phoenix petitioned to intervene, presumably as a defendant, *see id.* at 1480-81, in litigation between the Sierra Club and EPA involving water quality standards. *Id.* at 1480. Despite distinguishing *Portland Audubon*, *Sierra Club* appeared to reaffirm that case's pronouncement that the statute sought to be enforced in part could delineate an interest in intervention. *Id.* at 1483, 1484-85. The court found that, as a holder of wastewater discharge permits, the city had a legally protectable interest sufficient for intervention. *Id.* at 1482. Distinguishing *Portland Audubon*, the *Sierra Club* court stated that in *Portland Audubon*, the

6

loggers' interests appeared "to have been an economic interest based upon bare expectation," *id.* at 1482, and that courts

> ordinarily do not require that a prospective intervenor show that the interest he asserts is one that is protected by the statute under which the litigation is brought. It is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.

*Id.* at 1484.

Had the *Sierra Club* court ended there, it would have provided firm support for applicants' position, for Plaintiffs Forest Guardians and T and E do not dispute that applicants' economic interests here are based on grazing permits they now hold.

However, in what is arguably dicta, the *Sierra Club* court went on to state that

> *Portland Audubon* is most plainly distinguished from and reconciled with these cases [that allow intervention even where a statute under which the litigation is brought does not create an interest] by understanding it as a NEPA case. In NEPA cases, interests which might be protectable in other litigation contexts may not suffice for intervention as a defendant under *Portland Audubon*. NEPA does not regulate the conduct of private parties or state or local governments. NEPA requires the federal government to issue an environmental impact statement before taking any action "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Since NEPA requires only action by the government, no private party can comply with NEPA. It is for that reason that in a lawsuit to compel compliance with NEPA, no one but the federal government can be a defendant.

*Id.* at 1485.

The *Sierra Club* court, therefore, while striving to limit *Portland Audubon*'s reach, also reaffirmed that in NEPA litigation, courts should not allow full as-of-right intervention by private parties aligned with a defendant.

The issue arose again in *Forest Conservation Council*, 66 F.3d at 1489, where plaintiffs sued

7

"alleging that the Forest Service violated NEPA by failing to prepare an environmental impact statement assessing, on a region-wide and forest-wide basis, its guidelines for the management of the Northern Goshawk habitat." *Id.* at 1491. Putative intervenor, the State of Arizona, aligned with the Forest Service, alleged that it received between six and seven million dollars annually from timber sales in Arizona's national forests which would be impacted if the court were to grant injunctive relief. *Id.* at 1492. The State also alleged that it had an environmental stake in the litigation, because it was obligated to provide fire suppression activities on federal lands. *Id.* In reversing the district court's denial to intervene as of right, the appellate panel attempted to harmonize *Portland Audubon* and *Sierra Club, id.* at 1493-96, yet skirted the issue of whether a contractually protected economic interest, without more, could suffice as a Rule 24 interest to allow intervention.[3] *Id.* at 1497. Rather, the *Forest Conservation Council* panel held that the State had alleged sufficient concrete, plausible, and non-economic interests to satisfy Rule 24. *Id.* The court also held, however, that because NEPA applied only to the federal government, intervention was proper only at the remedial phase of the action, that is, when the issue of compliance had been decided. *Id.* at 1496, 1499. The court reasoned that since injunctive relief was an equitable remedy that required engaging in a traditional balance of harms analysis, even in the context of environmental litigation, *id.* at 1496, intervention at the remedial phase allowed affected parties to "present evidence to assist the court in fashioning the appropriate scope of whatever injunctive relief is granted." *Id.* at 1496. In a footnote, the *Forest Conservation Council* court once again maintained

---

[3] The Court is not unmindful that of all applicants here, only FNF Properties has alleged a purely economic interest. Applicants Pablo, Arrossa, and THG Corporation all in addition allege an environmental interest and state that they provide resources to the wildlife in the area. While those interests are not trivial, they are not contractually driven, *see Forest Conservation Council*, 66 F.3d at 1492, 1497, and can not alter the conclusion that none of the applicants has a duty to comply with NEPA or that NEPA does not provide a private right of action. *Compare Coalition*, 100 F.3d at 841.

that "appellants cannot claim any interest that relates to the issue of the Forest Service's liability under NEPA... In that respect, we agree with *Sierra Club*'s statement that 'in a lawsuit only to compel compliance with NEPA, no one but the federal government can be a defendant.'" *Id.* at 1499 n.11, *quoting Sierra Club*, 995 F.2d at 1485.

*Forest Conservation Council* maintained *Sierra Club*'s approach.

Returning to NEPA intervention in *Churchill County v. Babbitt*, 150 F.3d 1072 (9th Cir. 1998), *as amended*, 158 F.3d 491 (9th Cir. 1998), the Ninth Circuit continued in *Forest Conservation Council's* footsteps. *Churchill County* involved a challenge to a water rights acquisition plan where the City of Fallon and Churchill County, Nevada, alleged that the defendants had violated NEPA. *Id.* at 1076. When a local power utility sought to intervene as a defendant, the district court ruled that it could do so only at the remedial phase. *Id.* at 1077. The *Churchill County* court affirmed, stating that "because NEPA requires action only by the government, only the government can be liable under NEPA. A private party cannot 'comply' with NEPA, and, therefore, a private party cannot be a defendant in a NEPA compliance action." *Id.* at 1082. Thus the Ninth Circuit, in specifically looking at NEPA intervention where the intervenors were aligned with defendants, has consistently refused to allow intervention more complete than at the remedial stage, and in retreating from *National Audubon*, has always stopped short of allowing full intervention.

The Court concedes that other circuits have taken a broader approach. In its recent decision in *Kleissler v. United States Forest Service*, 157 F.3d 964 (3th Cir. 1998), the Third Circuit was faced in a NEPA compliance action with "a request for intervention by local government bodies and business concerns in litigation brought by environmentalists to restrict logging activity on a National Forest." *Id.* at 967. The government entities received funds, either directly or indirectly, from

9

logging operations in the forest. *Id.* at 968. Some of the private entities held existing logging contracts, others generated most of their income from Forest Service contracts, and one was a successful bidder on a contract whose award the Service had withheld pending outcome of the litigation. *Id.* The district court had denied intervention for all except those holding existing contract rights, ruling that all others only had an expectation of income generated from the forest. *Id.* Applying what it called a pragmatic approach to intervention, the *Kleissler* court stated that "[t]he reality is that NEPA cases frequently pit private, state, and federal interests against each other. Rigid rules in such cases contravene a major premise of intervention—the protection of third parties affected by pending litigation," *id.* at 971, and reversed. *Id.* at 974.

In its reasoning, the *Kleissler* court considered intervention at the remedial phase, but was concerned with the negative effect that the passage of time could have on intervenors. Recognizing that the public entities were very dependent on forest income, the court stated:

> To suspend the flow of revenue to the school districts and municipalities for even a limited period of time [if an injunction to bar logging pending NEPA compliance were to issue] would affect spending for essential school activities and public projects. We are persuaded that the interests jeopardized, which are protected by state law [mandating distribution of federal grant monies to schools and municipalities], are direct, substantial and of adequate public interest as to justify intervention. In these sparsely populated areas with limited tax bases, the impairment caused by curtailing revenue provided through logging activity could be significant.

*Id.* at 973.

Likewise, the *Kleissler* panel found that the private entities also had substantial Rule 24 interests, one intervenor because it had already been awarded a logging contract, and others because their very existence was jeopardized by the cessation of logging. *Id.*, *citing Sierra Club v. Espy*, 18 F.3d 1202, 1203 (5th Cir. 1994).

In *Espy*, several environmental groups challenged even-aged forest management practices, in part alleging violations of NEPA. *Espy*, 18 F.3d at 1203-04. Two trade associations, "representing most of the purchasers of timber from the Texas national forests," *id.* at 1203, moved to intervene as defendants. Summarily addressing the interest issue, the Fifth Circuit Court of Appeals opined that the companies the trade associations represented

> ha[d] legally protectable interests in existing timber contracts that are threatened by the potential bar on even-aged management. Since "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," we conclude that movants had an interest sufficient to satisfy Rule 24.

*Id.* at 1207, *quoting Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n.10 (5th Cir. 1992).

Both *Kleissler* and *Espy*, however, fail to meet the compliance issue head-on. Despite its well-developed analysis, *Kleissler* overlooks a fundamental aspect of a NEPA action: only the federal government need comply with NEPA, and therefore other entities, whether private or public, are not the interested parties with respect to compliance. Their economic interests, while possibly affected by compliance, only sequentially follow the compliance issue.

Likewise, the pragmatic standard in *Coalition*, echoing *Espy*'s, can not be decisive in this case. The *Coalition* court cited *Espy* for support when stating that the interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Coalition*, 100 F.3d at 841, *citing Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967); *Espy*, 18 F.3d at 1207. Without interpreting what may be a conflict in *Coalition* in setting both a practical standard and mandating a direct, substantial, and legally protectable interest for intervention, *see Coalition*, 100 F.3d at 840-41, this Court notes that even

11

under the more permissive reading of *Coalition* compliance with NEPA remains a uniquely federal issue, and that the Court may order only a federal defendant to act pursuant to NEPA.

Thus, taking guidance from the Ninth Circuit line of cases, the Court concludes that applicants here do not have a sufficiently direct, substantial, and legally protectable interest in this challenge to NEPA compliance to allow full as-of-right intervention under Rule 24. Even a broad pragmatic approach can not create a right or a duty where none exists. Applicants may have an interest in the outcome of this litigation by virtue of their holding grazing permits, but under NEPA, they have neither a duty to comply with the statute nor an interest in compliance itself. Their interest is, at best, more suited to intervention in the remedial phase of this action.

Intervenors next argue that the outcome of this litigation may as a practical matter impair their interest in grazing in the El Malpais, and the Court agrees. Under this element of Rule 24(a), such impairment or impediment need not be of a strictly legal nature, and the court may consider any significant legal effect in the applicant's interest. *Coalition*, 100 F.3d at 844. Intervenors allege that injunctive relief here has the potential for halting grazing for some time to come. NEPA actions are not known for their speedy resolutions. *See Forest Conservation Council*, 66 F.3d at 1498; *Kleissler*, 157 F.3d at 973. The Court finds, therefore, that intervenors' argument has merit. Moreover Plaintiffs, only arguing that without an interest intervenors can not be impaired, do not seriously debate this point. Intervenors meet the impairment requirement.

Finally, the Court finds that the existing parties do not adequately represent intervenors' interests. While an intervenor carries the burden of showing inadequate representation, that burden is minimal, and "the possibility of divergence of interest need not be great in order to satisfy the burden of the applicants." *Coalition*, 100 F.3d at 844-45, *quoting Natural Resources Defense*

*Council, Inc. v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1346 (10th Cir. 1978). Defendant BLM here represents the interests of the government and the public interest in NEPA compliance. Applicants' interests, quite apart from the NEPA compliance issue, are principally to continue grazing cattle in the El Malpais. Divergence is present, and under *Coalition*'s liberal standard there is no doubt that applicants meet this condition. *See, e.g., Coalition*, 100 F.3d at 845-46.

The Court will deny FNF Properties' request for permissive intervention. In arguing for permissive intervention, FNF properties focuses both on NEPA compliance and on the impairment of its interests, claiming that its defense would involve common questions of law or fact. With respect to NEPA compliance, FNF proposes to show that Plaintiffs' factual allegations concerning the handling of the FNF grazing permit are faulty, and that the BLM has conducted or is conducting all legally required environmental analyses. FNF Properties Brief in Support of Application for Leave to Intervene at 15. On these points, however, FNF can do no more than the BLM, which is in the best position to present a compliance argument. An applicant's input can not merely duplicate existing claims, and must bring something more to an action. *See Arney v. Finney*, 967 F.2d 418, 421-22 (10th Cir. 1992); Moore's Federal Practice § 24.10[2][b] (1998). With respect to the impairment of FNF's interests in continuing to graze cattle in El Malpais, the Court's granting intervention as of right at the remedial phase will fully address those concerns.

While the Court disagrees with applicants' position on full as-of-right intervention and will deny permissive intervention, the Court recognizes that their input on compliance may be important to the just resolution of this litigation. Accordingly, the Court will allow applicants to file an amicus

brief on the compliance issue.[4] The Court having ruled on this matter promptly, it has effectively granted FNF Properties' motion for expedited consideration.

**THEREFORE**,

**IT IS HEREBY ORDERED** that FNF Properties' Application for Leave to Intervene, filed October 2, 1998 **[Doc. No. 2]**, Application for Leave to Intervene of Irvin and Patricia Pablo, Irene Arrossa and THG Corporation, filed October 28, 1998 **[Doc. No. 8]** be, and hereby are, **granted in part**, and that FNF Properties' Motion for Expedited Consideration of Application for Leave to Intervene, filed November 4, 1998 **[Doc. No. 16]** be, and hereby is, **granted**.

**IT IS FURTHER ORDERED** that intervenors Pablo, Arrossa, and THG Corporation, as well as intervenors FNF Properties, Inc., may each file one amicus brief, not to exceed twenty-seven (27) double-spaced pages, on the issue of NEPA compliance.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs
Claybourne Clarke, Esq

Counsel for Defendant
John W. Zavitz , Esq.

Counsel for Intervenors Pablo, Arrossa, and THG Corporation
James R. Scarantino, Esq.

Counsel for Intervenors FNF Properties, Inc.
Timothy J. DeYoung, Esq.
Maria O'Brien

---

[4] Because they have filed separate motions and may present different factual positions on compliance, applicants Pablo, Arrossa, and THG may file a collective brief, and FNF Properties may file its own brief.