CLERK'S COPY

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 APR -2 PM 4: 10

CLERK-SANTA FE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FOREST GUARDIANS, a non-profit
organization, and T and E, Inc., a
non-profit organization,

    Plaintiffs,

vs.    No. CIV 98-1035 MV/WWD

BUREAU OF LAND MANAGEMENT,
an agency of the United States Department
of the Interior,

    Defendant,

and

IRVIN and PATRICIA PABLO, IRENE
ARROSSA, and THG CORPORATION,

    Intervenor Defendants,

and

FNF PROPERTIES L.L.C., a New Mexico
limited liability company,

    Intervenor.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion to Strike Plaintiffs' Motion for Summary Judgment, filed November 5, 1998 **[Doc. 19]**. The Court, having reviewed the motion, response, reply, relevant law, and being otherwise fully informed finds that the motion is well taken and will be **GRANTED IN PART**, as explained below.



## BACKGROUND

Plaintiffs Forest Guardians and T and E, Inc., both non-profit environmental advocacy groups, assert that Defendant Bureau of Land Management (BLM) has not complied with the mandates of the National Environmental Policy Act, 42 U.S.C. § 4321 (NEPA), in issuing grazing permits in the El Malpais National Conservation Area (El Malpais). The Complaint asserts that the BLM acknowledged to Plaintiffs that the agency must complete an environmental assessment (EA) in order to comply with the requirements of NEPA but that BLM has nevertheless refused to conduct an EA. Plaintiffs request the following relief: (1) a declaration pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 (APA) that the BLM failed to observe NEPA; (2) an order requiring the BLM to comply with NEPA; and (3) an injunction to prevent livestock grazing and revoking current grazing permits pending compliance. Intervenors are all the current holders of grazing permits in El Malpais.

Plaintiffs filed a Motion for Summary Judgment [**Doc. 17**] on November 4, 1998. In lieu of a response, Defendant BLM filed the instant motion seeking to strike Plaintiffs' motion on the grounds that under the 10th Circuit Court of Appeals precedent of *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994), an action challenging an administrative agency decision may not be resolved on a motion for summary judgment. BLM asks this Court to strike Plaintiffs' motion, to require Plaintiffs to re-file their motion after a certified copy of the administrative agency record has been lodged with this Court, and to impose a briefing schedule in accordance with the Federal Rules of Appellate Procedure.

## ANALYSIS

Defendant BLM argues that *Olenhouse v. Commodity Credit Corp., supra,* 42 F.3d 1560, forbids the use of trial court motions, specifically a motion for summary judgment, to resolve challenges to administrative agency decisions. BLM asks that Plaintiffs' motion be stricken, in that it is not based on the agency record, and that the Court adopt an appellate style briefing schedule, requiring the submission of briefs after Defendant has filed a certified copy of the administrative record with the Court. Plaintiffs respond that this is not a case challenging an agency decision, but rather a case challenging the failure of the agency to act. Therefore, Plaintiffs argue, *Olenhouse* does not apply.

In *Olenhouse*, wheat growers brought suit under the Administrative Procedures Act, 5 U.S.C. § 706, challenging a final decision by the Agriculture Stabilization and Conservation Service reducing "deficiency payments" for their crops. 42 F.3d at 1564. The district court resolved the case on a "motion to affirm" and a motion for summary judgment, considering evidence outside of the administrative record and accepting its own rationalization for the decision, one neither considered by the agency during the administrative proceedings nor proffered by the agency during the court proceedings. The Tenth Circuit reversed, finding that the trial court had erred in considering evidence outside of the administrative agency record and in coming up with its own explanation for the agency's actions. In reaching this conclusion, the Tenth Circuit stated,

> [j]udicial review of both formal and informal agency action is governed by § 706 of the APA, which provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found" not to meet six separate standards. Informal agency action must be set aside if it fails to meet statutory, procedural or constitutional requirements or if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Formal agency action must

3

> be set aside not only for failing under any of the "generally applicable" standards, but also if the action is unsupported by "substantial evidence" in the hearing record.

*Id.* at 1573-74 (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, (1971) and 5 U.S.C. § 706, citations and footnotes omitted). The court continued,

> [w]e have held the essential function of judicial review is a determination of (1) whether the agency acted within the scope of its authority, (2) whether the agency complied with prescribed procedures, and (3) whether the action is otherwise arbitrary, capricious or an abuse of discretion. Determination of whether the agency acted within the scope of its authority requires a delineation of the scope of the agency's authority and discretion, and consideration of whether on the facts, the agency's action can reasonably be said to be within that range. Determination of whether the agency complied with prescribed procedures requires a plenary review of the record and consideration of applicable law. Difficulty arises in connection with judicial review under the "arbitrary or capricious" standard.

*Id.* at 1574 (citations omitted).

The *Olenhouse* court then reviewed in detail the scope of the district court's duty when reviewing agency action under the arbitrary or capricious standard. The court stated, "[i]n reviewing the agency's explanation, the reviewing court must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment." *Id.* The court continued, "[b]ecause the arbitrary and capricious standard focuses on the rationality of an agency's *decisionmaking process* rather than on the rationality of the *actual decision*, 'it is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'" *Id.* at 1575 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 50 (1983), emphasis added). Moreover, "[i]n addition to requiring a reasoned basis for agency action, the 'arbitrary or capricious' standard requires an agency's action to be supported by the *facts in the record*." *Id.* (emphasis added). Accordingly, the Tenth Circuit stated,

> [u]nder this standard, the District Court was required to review the [agency's] decisionmaking process and determine whether the [agency] examined all relevant data and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made. It was also required to conduct a plenary review of the record to ascertain whether the agency's action was supported by 'substantial evidence.'

*Id.* at 1576. The court then held that the district court in *Olenhouse* "failed on both counts," by accepting an explanation for the agency's action not articulated in the record and not supported by substantial evidence in the record. *Id.* at 1576-80. The court concluded that "[t]here can be no affirmance of agency action on this record because the record does not permit a reviewing court to assess whether the action was the product of reasoned decisionmaking." *Id.* at 1578 (citing *Motor Vehicle Mfrs.*, 463 U.S. at 43, 50, 52-57).

The *Olenhouse* court continued to state that the district court's errors were due "at least in part, to the illicit procedure it employed to determine the issues for review. The District Court processed the Farmers' appeal as a separate and independent action, initiated by a complaint and subjected to discovery and a 'pretrial' motions practice." *Id.* at 1579. As noted, the district court had decided the issues on a motion for summary judgment and a "motion to affirm" which was also treated as a motion for summary judgement. The *Olenhouse* court declared,

> [t]his process, at its core, is inconsistent with the standards for judicial review of agency action under the APA. The use of motions for summary judgment or so-called motions to affirm permits the issues on appeal to be defined by the appellee and invites (even requires) the reviewing court to rely on evidence outside the administrative record. Each of these impermissible devices works to the disadvantage of the appellant. We have expressly disapproved of the use of this procedure in administrative appeals in the past, and explicitly prohibit it now.
>
> A district court is not exclusively a trial court. In addition to its nisi prius functions, it must sometimes act as an appellate court. Reviews of agency action in the district courts must be processed as appeals. In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure. Motions to

affirm and motions for summary judgment are conceptually incompatible with the very nature and purpose of an appeal.

*Id.* at 1579-80 (footnotes and citations omitted).

Citing this language, Defendant BLM asserts that the present action is a review of agency action which must be processed as an appeal by this Court. Plaintiffs respond that this is an action challenging the failure of the agency to act, specifically the failure of BLM to prepare and environmental assessment. Accordingly, Plaintiffs assert that this case does not fall under the mandate of *Olenhouse* and that, as a practical matter, there is no administrative record to review since no agency action was taken in this case.

NEPA provides that a federal agency undertaking "major federal action" must prepare an environmental impact statement (EIS) on the project. 42 U.S.C. § 4332. The statute itself makes no mention of "environmental assessments" (EA). *See Friends of the Bow v. Thompson*, 124 F.3d 1210, 1214 (10th Cir. 1997). Rather, the federal regulations implementing NEPA require an EA when the agency is unsure as to whether an EIS is needed. 40 C.F.R. § 1501.4. In both cases, the federal agency's duty under NEPA is only triggered by taking action, specifically a major federal action. In the present case, for example, the BLM is not under a statutory duty to produce periodic EAs or EISs. Rather, the BLM is under a statutory duty to prepare an EA or an EIS only before taking a major federal action. Thus, it is not the failure to act which is being challenged, but rather, the taking of an allegedly major federal action without preparing an EA.

Accordingly, the present case does in fact fall within the broad sweep of *Olenhouse*'s mandate as a case seeking review of agency action. *Olenhouse*, 42 F.3d at 1579-80. The question before the Court could be characterized as either (1) an assertion that the agency failed to abide by

procedures required by law, if the preparation of an EA was *required* by federal regulation; or (2) as an assertion that the agency's decision not to prepare an EA was arbitrary or capricious, if federal regulation did not require an EA but left that decision to the discretion of the agency. *Olenhouse*, 42 F.3d at 1574.[1] In the first case, "[d]etermination of whether the agency complied with prescribed procedures requires a plenary review of the record and consideration of applicable law." *Id.* In the second case, the Court must determine whether the agency's decision is supported by sufficient facts and a reasonable justification, as disclosed by the administrative record. *Id.* at 1576. In either case, under *Olenhouse*, the Court's analysis must be based on the administrative record. *Id.* at 1579-80; *see also Airport Neighbors Alliance v. United States*, 90 F.3d 426, 431 (10th Cir. 1996) (declining to consider affidavit of expert not part of administrative record); *Cronin v. USDA*, 919 F.2d 439, 443-444 (7th Cir. 1990) (holding that district court may not consider extrinsic evidence in NEPA cases); *Sierra Club v. Dept. of Energy*, 26 F.Supp.2d 1268, 1270 (D.Colo. 1998) (holding that a NEPA claim based on failure to conduct an EIS is limited to review of administrative record); *Brenham Community Protective Assoc. v. USDA*, 893 F.Supp. 652, 657 (W.D. Tex. 1995), *aff'd*

---

[1] The parties have not briefed this issue and the Court has been unable to locate a case directly on point. Tenth Circuit precedent holds that an agency's decision not to prepare an EIS, after having prepared an EA, is reviewed under the "arbitrary or capricious standard." *See Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 376 (1989); *Ross v. Federal Highway Administ.*, 162 F.3d 1046, 1051 (10th Cir. 1998); *Village of Los Ranchos De Albuquerque v Marsh*, 956 F.2d 970, 973 (10th Cir. 1992). However, the Tenth Circuit in *Village of Los Ranchos* specifically left unaddressed whether the decision not to prepare an EA is judged by the same standard or whether it is to be judged on the "reasonableness standard." On the other hand, in another recent Tenth Circuit case, the court directly reviewed whether a proposed project was a "major federal action," thereby triggering the duty to undertake an EA, rather than reviewing the *agency's decision* that the project was not a major federal action. *See Ross*, 162 F.3d at 1051; *see also* Jennifer Byrne, Note: Alaska Wilderness v. Morrison: The Return of Reasonableness to NEPa Review, 26 Envtl. L. Rev. 1287, 1312 (1996). The Court finds that this issue need not be resolved at the present time but wishes to bring the issue to the parties' attention.

*without opin*, 95 F.3d 49 (5th Cir. 1996) (limiting review in NEPA case to administrative record); *Don't Ruin Our Parks v. Stone*, 749 F.Supp. 1388, 1392 (M.D.Penn. 1990), *aff'd without opin.*, 931 F.2d 49 (3rd Cir. 1991) (limiting extrinsic evidence in NEPA case to issues regarding preliminary injunction, not merits of claim).

The question remains whether this Court may accept Plaintiffs' Motion for Summary Judgment, excluding any evidence which is not part of the administrative record. At least one other district court, cited by Plaintiffs, has taken this approach, interpreting *Olenhouse* as simply holding that the district court cannot consider evidence outside of the administrative record and cannot accept justifications not used by the agency in actually reaching its decision, but still may adhere to the typical motions practice used in district court, regardless of what the motion is called. *Southern Utah Wilderness Alliance v. Dabney*, 7 F.Supp.2d 1205, 1206 (D.Utah 1998). This court has apparently ignored the plain language of *Olenhouse*, quoted above, which in no uncertain terms states that appellate briefing procedures should be adopted. *See also Wyoming Farm Bureau Federat'n v. Babbitt*, 987 F.Supp. 1349, 1353 (D. Wy. 1997) (following rules of appellate procedure under *Olenhouse*). While this Court agrees with the implicit findings of the *Dabney* that the procedures proposed by the *Olenhouse* court fail to account for all of the realities of district court practice, the Court cannot agree that *Olenhouse* does not say what it so plainly says.

Specifically, the Court notes that strict adherence to the *Olenhouse* procedures in NEPA cases in particular will often be impractical if not impossible. While the *Olenhouse* ruling may seem workable in cases challenging an agency's decisions in an entitlement case- for example, a decision to reduce farm subsidies or not to renew a permit- or in a case challenging the promulgation of new regulations, the sweeping ruling of *Olenhouse* fails to account for the unique problems of NEPA

8

cases. *See generally* Susannah French, Comment: Judicial Review of the Administrative Record in NEPA Litigation, 81 Calif. L. Rev. 929 (1993) (reviewing the use of extrinsic evidence in NEPA cases and arguing that judicial review in such cases should not be limited to the administrative record). NEPA cases often present issues of standing and mootness, issues which cannot be resolved on the administrative record but require the production of additional evidence and issues best resolved through pre-trial motions practice. *See Utah v. Babbitt*, 137 F.3d 1193 (10th Cir. 1998). NEPA cases also often seek preliminary injunctions, requiring the district court to accept evidence on whether there is a risk of irreparable harm, a distinct issue from the merits of the case, and requiring the court to rule before an official record can be produced. *See Utah v. Babbitt*, 137 F.3d 1193; *Don't Ruin Our Parks*, 749 F.Supp. at 1392. In addition, as other courts have specifically recognized, a district court may be unable to properly adjudicate a NEPA case absent expert testimony explaining the technical issues in the case. *See Valley Citizens for a Safe Environment v. Aldridge*, 886 F.2d 458, 460 (1st Cir. 1989) (discussing times when extrinsic evidence may be needed in a NEPA case); *Sierra Club v. Dept. of Energy*, 26 F.Supp.2d 1268, 1270 (D.Colo. 1998) (holding that district court may accept extrinsic evidence for limited purposes, including when necessary to explain technical terms). Further, the court may require extrinsic evidence to assess whether federal involvement in a project is sufficient to trigger the requirements of NEPA. *See Sierra Club v. Hodel*, 848 F.2d 1068, 1090 (10th Cir. 1988). Finally, what constitutes the "administrative record" in NEPA cases, cases usually challenging informal agency action, may be in dispute. *See City of Waltham v. US Postal Service*, 786 F.Supp. 105 (D.Mass. 1992) (discussing scope of administrative record and noting court may need to look past the record for evidence of bad faith by agency); French, Judicial Review of the Administrative Record, 81 Calif. L. Rev. at 938. Indeed, for these reasons, cases from

the Tenth Circuit as well as other circuits have routinely admitted extrinsic evidence in NEPA cases. *See* French, Judicial Review of the Administrative Record, 81 Calif. L. Rev. at 949-954 (citing numerous cases from the Tenth Circuit and other circuits accepting extrinsic evidence in NEPA cases).

Yet, despite these concerns, in the present case, the parties have presented no facts or argument which demonstrate that the *Olenhouse* ruling cannot be applied here. Plaintiffs argue that there is no administrative record to review in this case since they are challenging the failure of the BLM to undertake an EA. However, Plaintiffs' Complaint states that the BLM acknowledged in correspondence with them that in order to comply with NEPA, the BLM must conduct an EA prior to issuing or renewing grazing permits. Complaint ¶ 23. This correspondence is part of the administrative record. If the record reveals that BLM did in fact acknowledge a need to undertake an EA and then failed to do so, without sufficient justification *in the record*, then the Court will be compelled to conclude that the agency has failed to fulfill its statutory duties, regardless of what standard of review is applied. In this respect, the Court notes that the agency- the party which brought this motion requesting that the parties be limited to the administrative record- will not be permitted to produce any evidence on the decision not to undertake the EA which is not contained in the record. *Cf. Sierra Club v. Marsh*, 976 F.2d 763, 771-75 (1st Cir. 1992) (upholding admission of affidavits from the agency explaining basis for decision not to undertake an EIS); *Friends of the Payette v. Horseshoe Bend Hydroelectric Co.*, 988 F.2d 989 (1993). Under *Olenhouse*, "[t]here can be no affirmance of agency action . . . [unless] *the record* . . . permit[s] a reviewing court to assess whether the action was the product of reasoned decisionmaking." *Supra*, 42 F.3d at 1578 (emphasis added).

Accordingly, despite its reservations, the Court concludes that is must at least attempt to apply the *Olenhouse* ruling in this case. The Court holds that resolution of the question of whether BLM must complete an environmental assessment must be based on the administrative record. Plaintiffs' Motion for Summary Judgement, filed prior to the filing of the administrative record in this case and not based on that record, must therefore be stricken.

However, because this is a case of informal agency action, with no clearly defined "administrative record," the Court will permit Plaintiffs to challenge the accuracy of the record as presented by the BLM. Further, because the record is not currently before the Court, Plaintiffs will also be permitted to challenge the sufficiency of the record as a basis for resolving the issues in this case once that record has actually been produced, identifying specifically what extrinsic evidence Plaintiffs believe the Court should consider and why. Accordingly, after the BLM has filed a certified copy of the administrative record with the Court, Plaintiffs will have thirty (30) days to file a motion challenging the accuracy or completeness of the record, and/or a motion asserting that the Court needs additional information to resolve the issues presented in this case. The parties are to adhere to the local rules of this Court in preparing and filing these motions.

Within twenty (20) days of the Court ruling on these motions, or, if Plaintiffs choose not to file such motions, within forty-five (45) days of the filing of the certified record, Plaintiffs may submit their motion for summary judgment, based on the settled record, as a "brief" seeking judgment in their favor on their appeal of Defendant BLM's actions. The parties shall observe the page limits, format and briefing schedule used by the Tenth Circuit, but the "briefs" shall be filed with this Court as a packet. Finally, in accordance with the prior ruling of this Court, the Intervenors shall be permitted to file "amicus briefs" on the issues raised in Plaintiffs' "brief."

The Court recognizes that this procedure is unprecedented. However, the Court can deduce no other means of adhering to the holding of *Olenhouse* while also providing the parties a fair opportunity to litigate the issues in this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike Plaintiffs' Motion for Summary Judgment **[Doc. 19]** is hereby **GRANTED IN PART**. Plaintiffs' Motion for Summary Judgment **[Doc. 17]** is hereby **STRICKEN**.

**IT IS FURTHER ORDERED THAT** Defendant BLM shall file with this Court and serve on all other parties a certified copy of the administrative record in this case within twenty (20) days of the entry of this order. Once the administrative record has been filed, Plaintiffs will have thirty (30) days to file a motion challenging the accuracy or completeness of the record, and/or a motion asserting that the Court needs additional information to resolve the issues presented in this case. The parties shall follow the local rules of this Court in preparing and filing these motions. Within twenty (20) days of the Court ruling on these motions, or, if Plaintiffs choose not to file such motions, within forty-five (45) days of the filing of the certified record, Plaintiffs may submit their motion for summary judgment, based on the settled record, as a "brief" seeking judgment in their favor on their appeal of Defendant BLM's actions. The parties shall observe the page limits, format and briefing schedule used by the Tenth Circuit, but the "briefs" shall be filed with this Court as a packet.

Finally, in accordance with the prior ruling of this Court, the Intervenors shall be permitted to file "amicus briefs" on the issues raised in Plaintiffs' "brief."

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs
Jill Smith
Claybourne Clarke

Counsel for Defendant
John W. Zavitz

Counsel for Intervenor Defendants Pablo, Arrossa, and THG Corporation
James R. Scarantino

Counsel for Intervenor FNF Properties, Inc.
Timothy J. DeYoung
Maria O'Brien